Good morning, ladies and gentlemen. Our first case for argument is St. Augustine School v. Underly. It is our position that this case cannot be finally resolved without addressing the plaintiff's Section 1983 claim. Even if there still was a state law claim remaining in the case, and there does not appear to be, complete relief cannot be granted on that state law claim. Under Wisconsin law, damages cannot be awarded. An injunction cannot be put in place. Could I just ask you about that? When you first began this litigation in the state court, it was my understanding that, among other things, you had two state law claims. One of them was a common law certiorari claim, which, as you say, does not carry with it the right to damages. But the other was a claim under the Wisconsin Declaratory Judgments Act, which does permit damages and injunctive relief in appropriate circumstances. So what happened to the second claim? Actually, I don't even want to call these claims, because I think one of the confusions in this case has stemmed from the fact that you're calling things that are claims that are really just different theories for relief. Yeah, I mean, I think that's fair. I think in this instance, I don't think that no party has ever claimed that damages or injunctive relief would be available under state law. Why does that compel the court to forget that you have a declared? I mean, there are a lot of things about this case that are confusing, of course, as everybody has commented. But you seem to think that when the first appeal was taken, somehow certain things were appealed and other things were not. Usually it's judgments that are appealed. And the judgment included everything from decisions to relinquish jurisdiction to summary judgment to whatever it included. Well, that's right. Judgments were appealed. And so this judgment was appealed, and it turned out in the end, after two visits to this court and one to the Wisconsin Supreme Court, that the district court had erred. So I'm curious when you think the judgment got severed into different parts and one of the parts went back to the state court. I don't know that the—well, upon remand, the claim is returned to the state court. But when did that happen? It's not so much that the— Could you please tell me when it went back to the state court? After our second appeal? After our first appeal? The minute the district judge tried to resolve the case? I think that the district judge declined to exercise supplemental jurisdiction. Yes. And you appealed. And we appealed. Right. That's how the case got to the Court of Appeals. Yes. Right. So at that point, nothing has gone anywhere. Right? There's one final judgment. It's appealed to the Court of Appeals. Now, there may be a question in this case with forfeiture of particular legal theories on the first appeal or maybe in the subsequent proceedings, but I don't see how anything is in state court. There's just been one judgment. Nothing has happened in state court. There is nothing in state court. There's been one judgment. The judgment was appealed. None of the litigants at that point ever asked this court to reverse the district court's determination or declination of supplemental jurisdiction. And in fact, this court, when it issued its first decision, which I guess we'll call St. Augustine I, did not sua sponte decide that it would exercise supplemental jurisdiction. But the usual rule is, and I can think of many cases in which this has happened, if federal claims are reinstated, then part of the mandate pulls back in anything. It requires reconsideration of what you're doing with the supplemental claims. If the federal claims are rejected, then oftentimes the best thing under 1367C is to allow people to pursue whatever they may. But we never got there in this case. This has been in constant litigation since the time you appealed St. Augustine I. Remember? Because there's St. Augustine. There was the district court's opinion. Then it comes to this court. Then there's the petition for certiorari, which is granted, vacated, and remanded for reconsideration in light of Espinoza. Then there's the Wisconsin Supreme Court. Then there's this court trying to take into account both Espinoza and the Wisconsin Supreme Court. Then there's our other decision. Then there's no certiorari granted. When did this actually go back to the state court? I don't know if I would phrase it in terms of going back to the state court. Although that's what your brief says. I think that what happened here is that the district court declined to exercise supplemental jurisdiction. Then from that time- Then you appealed. Right. Then we appealed. Here we are. We need to decide where to go. Let's suppose you're right, that there is some residual state law claim furtively in state court, though we can't figure out where and how that happened. How does that require us to render a decision under the Constitution of the United States? The normal rule is that if a litigant has a good claim under state law, the federal court will abstain. It seems to me, on your view, what you are asking us to do is not resolve a claim in your favor, but abstain in favor of the state litigation. I don't know if I would characterize this as just saying that there's furtively a claim in state court or that there's even some nascent claim here. I think our position and the position of all the parties here has been, and the position of this court I think initially was, that the district court had declined to exercise supplemental jurisdiction. No one was challenging that. It's fine. Look, I hope you see where at least I am coming from. The position taken in your brief seems to be that by declining to rest on state law, we can force a federal court to decide a federal constitutional issue. As far as I know, that's never been the case. If there's a good state law claim, it always comes first. Constitutional adjudication is a last resort. And the federal court, under one of quite a large number of doctrines, will abstain and leave the plaintiff to the state law remedy. On your view that there is a state law theory in state court, which the Supreme Court of Wisconsin has already resolved in your favor, why in the world would we do anything other than abstain? Because it has been our position and the position of all the parties in this case that complete relief cannot be granted under the state law claim. And Judge Wood asked, why isn't the declaratory judgment theory? There's only one claim in this case. Why isn't the declaratory judgment theory sufficient to support damages? I didn't hear an answer to that question. Because the district court found... No, no, no, no. Let me just intervene here. You have been, or at least this is how I have read the briefs, you've made it very clear that your interest is in obtaining ruling under 42 UIC section 1983 and the religion clauses of the First Amendment. You're allowed to want whatever you want. So, you know, if that's what you want. But it doesn't mean that we as a court can be manipulated into deciding a federal constitutional claim if, in fact, there's nothing wrong with the state law. And as I read the Wisconsin decisions, this has never been litigated. That's why the record is so limited on this point. But as I read the decisions, the Wisconsin courts do recognize the full range of remedial possibilities that you're looking for, too. So it's a little weird, I have to say, to see somebody who has won in the Wisconsin Supreme Court, who has prevailed, presumably your interest is in getting the four done in kind, but this is now reimbursed. You won. You got that. That's the principle. That's how Wisconsin law is now to be read. And it's like you're not happy with winning. You want something else. Well, we're very happy with winning, I assure you. But I think, and perhaps I'm wrong, and perhaps we should have done it another way, but I don't think so, that these forms of relief were not available to us in state court. But you never looked at the Declaratory Judgment Act. You kept talking about certiorari. And I think that normally, if a litigant, in this case the plaintiffs, wanted to argue that abstention was appropriate because the plaintiffs would be entitled to full relief in state court, they would have made that argument. It didn't make that argument. Abstention is a doctrine a federal court can invoke on its own. It can. In order to protect itself from litigants, as the litigants here seem to be, who want to force an unnecessary decision on the federal tribunal, courts have a power of self-protection. Well, they do, but again— And really, what relief other than the attorney's fees? I don't know what Wisconsin law would do with attorney's fees. I do know that there's 1988 in the federal system. But again, I can think of many instances in which people pursue state remedies, and maybe the state law isn't as generous with attorney's fees. Maybe it's more generous. Maybe it has a full fee-shifting regime. It doesn't. There's no provision under state law to cover attorney's fees in this case. But that's a— Unless— Is that the kind of remedy that these doctrines are aimed at? Attorney's fees? Well, typically we talk in terms of— Which we, by the way, don't know what the district court would do with, since that part of the case is not before us. So typically, I think we would say that we would focus on injunctive and declaratory relief. In this case, I think— Which Wisconsin can give you. I don't believe that Wisconsin can give you. No one in this case has ever taken the position that Wisconsin can. Has nobody ever looked at it? Everybody got all swept up in these other issues, you in particular. I mean, the state doesn't have to make your argument for you against itself. Again, I don't know that it would be our argument. We can't—I don't see how the defendants can claim that we've waived something unless they demonstrate that there's something that exists that's there to be waived. That's never happened in this case. And so it seems to me to put us in a quite difficult position to be here after we've been to the United States Supreme Court twice. We've been to the Wisconsin Supreme Court's third trip to this court. And now for the first time, the defendants seem to be saying that we waived something, but they don't establish that there was something that we waived. We don't think that there is. And had that argument been made, then maybe you're right. Maybe the problem is everybody got swept up in it. But had that argument been made, there would have been an opportunity to debrief and get some type of resolution. But it not having been made, now here at the last minute, it seems to put our client in a very difficult position, particularly since I don't know that there's any particular constitutional avoidance to be had here in order to determine that there was a state law violation. One has to conclude, as this court did in—I think we're calling it St. Augustine III now—that the state made a doctrinal determination. The state statute, with the guidance we had received from the Wisconsin Supreme Court, that the state statute must be construed to give entities in the position of your client their transportation benefits because of the doctrinal differences. That was just a, what has Wisconsin decided to give you, decision. That was not anything else. You can read the opinion carefully. No, I understand that that's what the opinion said, but in this case—and I know that the court explicitly said that it was not resolving any constitutional issues. Because all we were looking at is what does—if Wisconsin law is already giving you everything you want, then what's the First Amendment have to do with anything? It's not giving us everything we want because what we would like to have is we would like to have damages for the four Os. It's not a huge amount of money. It's $9,000, but it's significant to them. I think having been fought tooth and nail by the defendants for seven years now, I think an award of attorney's fees is appropriate. And I think because of that, an award of injunctive relief is appropriate, and that's what we—that's why we're here, and that's what we think that we're entitled to. Thank you. Thank you, Mr. Essenberg. Ms. Juerz. May it please the Court, Assistant Attorney General Hannah Juerz, on behalf of Wisconsin State Superintendent Jill Underley. While the procedural history of this case is complex, the dispositive question before this Court in St. Augustine's appeal is not. Could this Court grant St. Augustine Section 1983 relief consistent with this Court's decision in St. Augustine III? And the answer is a resounding no, as this Court expressly held that it was not necessary to reach the constitutional issues to resolve this case. And our cross-appeal is also straightforward, as both parties to it agree that St. Augustine could not receive relief on a state law claim. And as Your Honors noted— But I need to press you on this. As I read the Wisconsin Declaratory Judgment Act, in the world it would be possible for St. Augustine to get not just a declaratory judgment pursuant to state law, but if need be, backup injunctive relief, and even—and this is somewhat unusual, not like the federal statute—even backup damages. Now, nobody ever seems to have asked for that. I don't know where that is in the universe, but as a theoretical matter, those kinds of relief are indeed possible under Wisconsin state law. So I'm not sure whether we should be thinking of waiver or whether we should be thinking of another opportunity to show, pursuant to state law, what those damages might have been. I know there's this side dispute about whether it's $1,500 or $9,000. I mean, there are issues floating around with what the actual money injury has been. So, a few points, Your Honor. To start, as the Court noted, St. Augustine has never even attempted to show that it could not obtain those damages under state law. To be clear, those are damages against the school district, not the state. I would also point out to the Court that Wisconsin statutes contemplate tort liability against localities. The statute on that is 89380. So I think the key point here is that they're asking this Court—they're essentially attempting to foist constitutional adjudication on this Court based on— It's under both the common law certiorari procedure that Wisconsin has and the state's declaratory general statute. That's correct. As well as 1983, of course. That's correct. Ultimately, St. Augustine's fight is not really with the district court's decision that's on review. It's with this Court's decision in St. Augustine III, and its core argument on that point is not new. It argued before this Court issued St. Augustine III that this Court should not stop at state law grounds but should proceed to the federal question. It did that in its Rule 52b statement, and it advanced all of the arguments that it tries to renew on this appeal, both to this Court and to the United States Supreme Court after St. Augustine III. But even if St. Augustine could continue to litigate—relitigate those questions here, its core argument fails. And that core argument, as I understand it, is this, that because the 4-0 parents sought damages against the school district for past benefits, which, as we've discussed, St. Augustine claims without having established they could not have obtained in Wisconsin courts, that that means this Court erred and had to reach the constitutional issues. And that argument fails for multiple reasons. First, the easiest way to see why it fails is the Supreme Court's decision in New York City Transit Authority v. Beezer. That case concerned both statutory and constitutional question, but the lower court went straight to the constitutional question. And before the Supreme Court, the plaintiffs argued that it was proper for the lower court to go right to the constitutional question because there was a specific form of additional relief that certain plaintiffs would not be able to obtain in simply showing a statutory violation, but would be able to obtain in showing a constitutional violation. But the Supreme Court instead chastised the lower court for reaching the constitutional issues. It said, we do not condone this departure from settled federal practice. And the Supreme Court held that had the lower court confronted the statutory issue, it presumably would have concluded that it could have decided the case without addressing the constitutional issue. And so Beezer thus directly refutes St. Augustine's core argument, and in so doing shows that there's also no way that St. Augustine can prove that this court's St. Augustine III decision was clearly erroneous, which is what it would have to do to overcome the law of the case. Beezer also refutes St. Augustine's jurisdiction argument. St. Augustine mistakenly equates this court having jurisdiction over a 1983 claim with a responsibility that this court reach a decision on the merits of the constitutional claim. Not so. In Beezer, the Supreme Court recognized that resolving cases on non-constitutional grounds is not limited to questions of jurisdiction. Instead, as Your Honors mentioned earlier, it's a policy of federal court self-governance that extends into cases where it's unquestionable that the federal court has jurisdiction. And indeed, it is no surprise that avoiding reaching constitutional questions where a party seeks constitutional clarity would be disappointing and even at times potentially disadvantageous to a party, but restraint is considering the broader risks of overreaching into adjudicating constitutional questions. So Ms. Juris, let me ask you a very practical question. Is it the state's position at this point that it's just too late somehow for St. Augustine or the Foros or whomever the proper party may be to obtain those damages for the years during which the children were not having their transportation supported? Or is it too late for an injunction? Those are two separate questions entirely. So are they just out of luck? Because I would like to know the state's position on both of those requests for relief. And just to make sure I understand your question, you mean damages and injunction under Wisconsin law? Under anything, but under state law. Okay. So yes, it's our position that at this point they would not be able to receive either damages or an injunction in Wisconsin law What I would stress, though, is that, again, the damages are not against the state superintendent. Right. I understand they would be against the school district. So is it – I take it then it's your view that in terms of – I'm just going to call it burdens of pleading, burdens of going forward, the burden was on them to point to the Wisconsin declaratory judgment statute, not on the state to say, oh, if you want to have a judgment against a school district or us, here it is. Yes. As Your Honor noted, it's not our responsibility to prove their case for them. And they are the ones that are coming to this court and saying that this court should abandon this fundamental tenet of judicial restraint based on assertions about what they could or could not have obtained in Wisconsin courts, which as the district court pointed out at page 18 of its decision, they never even attempted to show. Ultimately, St. Augustine School's attendance area has been approved by the school district. The families are now receiving the benefits. So this is a going forward point, though, you're making. Wasn't it as of 2022 that things were finally put to rights? Yes. And so what I want to just stress is that while this court should not disturb its St. Augustine III decision, even if somehow this court were to hold otherwise, if it were to reach the constitutional issues and find those in St. Augustine's favor in terms of the question of injunction to warrant an injunction against the state, St. Augustine would have to be able to show some sort of ongoing policy. And they can't show anything like that. They cannot show that this is anything other than a single decision that the state superintendent made in 2016 that was driven in large part by the unique facts of the case and the fact that St. Augustine did not provide its articles of incorporation by operation of Wisconsin law. The superintendent cannot become involved in this decision unless the private school's attendance area is denied. And then both the private school and the school district ask the superintendent to make a final decision. And so mere this attendance area has now been approved by the school district. And so mere speculation is nowhere close to warrant any sort of injunction against the state. So. Unless there are further questions from this court. OK, thank you very much. Thank you. Ms. Tierney. Good morning. I please the court. Danielle Tierney of Axley-Brennelson representing the Freese Lake School District. Can I ask, is that who you're representing now? Are you representing Holy Hill? We are still currently representing the Freese Lake School District interest in this case. Does it exist? It now is incorporated into another school district in the Holy Hill area. However, Holy Hill was never brought in as a party, has never been. No claims are asserted against Holy Hill. No remedies are sought against Holy Hill. We're strictly dealing with an issue here in 15-16 as it pertained to the Freese Lake School District. And as we noted in our brief, we joined entirely in with the state's position. The only issue that we, I don't know, that we differed on necessarily, but as Attorney Juris pointed out, the state is not, could never really be on the hook for monetary damages. So that was the only issue that we needed to step in and assert. And as I want to address one of the questions that you had asked, Judge Wood, which is, is it too late for damages under state court law? And I think, unfortunately, for the plaintiffs, the answer is yes. And the district court, I think, correctly found that there had been a complete and total abandonment, an intentional move away from any state court damages remedies in an effort to push forward this federal court remedy. And unfortunately, there being no federal court remedy, there was a state court remedy that was available. The plaintiff's decision in this case not to pursue that has made those, has resulted in the plaintiff's intentional relinquishment of that. The fact that they deliberately chose not to pursue that relief, they never argued for it in front of the district court. The district court noted in its decision that the plaintiffs had explicitly said, we're not seeking relief, monetary relief, under state court law. They never at that point mentioned the Declaratory Judgment Act, though. They kept talking about certiorari. Correct. And to your point, and I think as the plaintiffs did point out, nobody really raised the issue. However, I think that burden rests with the plaintiffs. That's not something that the defendants, or again, specifically the school district on our side, being potentially on the hook for monetary damages, needs to go in to look and say, you could have these remedies available, but here's why they're not available. We're just merely following where the plaintiffs have taken this case, and their focus has always been on these constitutional issues. They've kind of hung their hat on it, and as you noted, that's fine. A lot of people can want what they want, but then I think, despite the fact that this case has been going on for seven years now through multiple courts, it doesn't necessarily excuse the actions, and we can't backtrack. And so to answer the question is, yes, I think it is too late for damages. The only kind of point that we raised in our brief was that if somehow this court were to overrule prior decisions, which, as Attorney Juris noted and briefed in full, is not appropriate, it would be an issue of damages under federal court law. We've outlined the differences in positions on that. However, based on kind of the questioning here, and I think the court's questions and understanding of where it intends to go, I don't know that there's really a whole lot for this court to do on the federal court damages question. The question would have been under state court law, which they've relinquished. With respect to the adjunctive relief under state court law, again, that was an intentional waiver that the district court noted at the lower court level. And as Attorney Juris pointed out, the school district has approved the transportation area, the attendance area for the St. Augustine school. There's no evidence whatsoever that there's going to be any change to that attendance area. And, in fact, under Wisconsin law, that attendance area remains in effect year after year until such time as the school would seek to change it. Under state law, does the superintendent have to accept the district's decision? I believe, as Attorney Juris noted, that the only way the superintendent gets involved is if there's a denial of the requested attendance area by the school district, and then the school and the school district then jointly request for the superintendent to get involved. So assuming that if St. Augustine were to propose a new attendance area and the school district were to approve it, there's no reason for the superintendent to get involved. If St. Augustine proposed a new attendance area and the school district denied it,  but absent that, the superintendent would not be involved. Thank you. Nothing further. Thank you. Thank you, counsel. Anything further, Mr. Esenberg? You have nine seconds. If you're going to talk, you must be at the podium. If, in fact, relief might be available under state law, then we would request the opportunity to brief it. I don't think that's true. It's far too late for that, counsel. This case is taken under advisement.